UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BROWN | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL NO. 3:CV-03-2392 |
| v. | : | |
| | : | (CHIEF JUDGE VANASKIE) |
| BENJAMIN A. MARTINEZ, ET AL., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

I.     **Introduction**.

Presently before the Court is Defendants' Motion for a Protective Order to preclude the production of Plaintiff's mental health records. (Dkt. Entry 33.)  For the following reasons, Defendants' motion will be granted.

II.     **Relevant Procedural Background**.

A telephone conference was held in this matter on April 7, 2006, to address outstanding discovery disputes between the parties revolving around Brown's document requests numbers 10 and 11, which seek production of Plaintiff's mental health records and copies of the Special Management Unit ("SMU") policies and operations manuals.  During the course of the telephonic conference the parties were able to resolve the dispute regarding document request number 11, which sought a complete copy of all SMU polices and procedures, by the Defendants agreeing to produce a copy of the SMU Handbook that is

distributed to inmates upon their reception to the unit.  The sole remaining dispute involves

request number 10, which seeks "[a] complete copy of all statements, evaluations, reports,

recommendations, psychology and psychiatry reports, written on Mr. Brown while in the RHU

and SMU."  After hearing argument from Mr. Brown as to his specific need for these documents,

and Defendants' reasoning for protecting their disclosure, I ordered Defendants to produce

Brown's treatment file for in camera review.  I have reviewed the 98 pages of treatment records

(i.e. psychological and psychiatric notes, comments and evaluations) concerning Brown

produced by Defendants.

III.    Legal Standard on Scope of Discovery.

            The scope and conduct of discovery are within the sound discretion of the trial

court.  Marroquin-Manriques v. INS., 699 F.2d 129, 134 (3d Cir. 1983).  Generally, courts afford

considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest

possible knowledge of the issues and facts before trial."  Hickman v. Taylor, 329 U.S. 495, 501

(1947).  The polestar of discovery is relevance.  Federal Rule of Civil Procedure 26(b)(1) states

that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the

claim or defense of any party. . . .  Relevant information need not be admissible at the trial if the

discovery appears reasonably calculated to lead to the discovery of admissible evidence."  "[A]ll

relevant material is discoverable unless an applicable evidentiary privilege is asserted.  The

presumption that such matter is discoverable, however, is defeasible."  Pearson v. Miller, 211

F.3d 57, 65 (3d Cir. 2000).  A party objecting to discovery on the basis of a privilege carries the

initial burden of showing the privilege applies.  To meets its burden, the party "must present

more than a bare conclusion or statement that the documents sought are privileged. Otherwise,

the [party], not the court, would have the power to determine the availability of the privilege."

Redland Soccer Club, Inc. v. Department of the Army of the United States, 55 F.3d 827, 854

(3d Cir.1995).

When a government entity asserts a claim of privilege, the Court "itself must

determine whether the circumstances are appropriate for a claim of privilege."  United States v.

O'Neill, 619 F.2d 222, 226 (3d Cir. 1980).  Claims of government document privilege may be

sustained when the head of the agency in question, in this case, the Secretary of the

Pennsylvania Department of Corrections, affirms that he has reviewed the requested material,

there exists "a specific designation and description of the documents claimed to be privileged,"

and there are "precise and certain reasons" for preserving their confidentiality.  Id. (citation and

internal quotation marks omitted).

IV.    Discussion.

Brown was transferred from SCI-Huntingdon to SCI-Camp Hill's SMU on May 23,

2001.[1]  He was released from the SMU to SCI-Dallas' general population on February 7, 2002.

---

[1] I note that any claims arising out of Plaintiff's confinement at any facility that occurred
more than two years before his lawsuit was filed are time-barred.  See Lake v. Arnold, 232 F.3d
360, 368 (3d Cir. 2000) (two-year statute of limitations for personal injury actions applies to civil

While his initial placement or transfer to the SMU is no longer at issue in this case (as it is barred by the statute of limitations), Brown claims he was held in each phase of the program an inordinately long time for the purpose of retaliating against him for th exercise of his First Amendment rights and to negatively impact his parole opportunities.  In an effort to expedite his release from the SMU, Brown agreed to participate in a psychological evaluation to determine whether he should be released from the SMU as a long term administrative custody inmate or placement in a general population setting.  Brown seeks the disclosure of this evaluation, conducted in October of 2001, as well as others completed for the purpose of parole.  Brown claims these psychological and psychiatric reports are relevant to this proceeding "since the Board decision to deny parole were based on Mr. Brown's psychology [sic] and psychiatry [sic] evaluation . . . ."  (Dkt. Entry 21.)

Defendants object to the production of Brown's mental health records as privileged.  Secretary Beard, as administrative head of the Pennsylvania Department of Corrections, has signed a declaration that states that he has considered the scope of the records encompassed within Brown's requests and reviewed the identified documents which he believes are confidential and privileged.  He urges the non-disclosure of these specific documents based on the need to encourage mental health professionals to enter candid

---

rights actions filed in federal court in Pennsylvania).  With this time frame in mind, I weighed Brown's stated need for his treatment files against the DOC's need to maintain their confidentiality.

-4-

opinions and evaluations without concern of disclosure, especially to the subject inmate, that may expose mental health staff to retaliation by inmates, may compromise therapeutic treatment, or may be used for the purpose of manipulating diagnosis and the treatment process itself.    (Dkt. Entry 36, Declaration of Jeffrey A. Beard.)

Generally, inmate files contain a multitude of documents, many of which are created by institutional personnel in assessing an inmate's medical, psychological and/or institutional adjustment, parole readiness, etc.  For the security and protection of those staff members whose objective assessments must not be compromised by fear of retaliation, those documents are not turned over to present or former inmates.  See generally, Tarlton v. United States, 430 F.2d 1351 (5th Cir. 1970)(inmate records are confidential and are not subject to inspection by inmate).  In this case, having the opportunity to carefully review the documents in question, I do not find that them particularly relevant to the remaining issues at hand so as to overcome the Defendants' need to protect their contents.

As suggested by Defendants, the treatment records of Brown contain candid comments by mental health staff that if released may affect their ability to interact with Plaintiff. For the most part, the documents reflect that treatment staff have regularly monitored Plaintiff during his lengthy incarceration for programming, parole, and more recently, immigration purposes.  The majority of these documents record staff interactions as required by SMU or RHU policies.  There are, however, a number of more in-depth evaluations for the purpose of

housing considerations and parole.  I have reviewed the October 24, 2001, evaluation conducted at SCI-Camp Hill for the purpose of aiding staff in their decision making process as to Brown's advancement and release from the SMU program.  While considering information contained in Brown's institutional file, the evaluator's recommendations were primarily based on testing and personal observations of Brown, and not on other more nefarious reasons as suggested by Brown.    Likewise, I have reviewed and reached a similar conclusion as to psychological evaluations undertaken at the request of the Pennsylvania Board of Probation and Parole after December 29, 2001.  These evaluations evenly reflect both concerns as to his risk of re-offending as well as factors against his re-offending.[2]

Having reviewed Brown's treatment documents, I do not find them to contain information that would support Brown's assertion that he was held in the SMU for an inappropriate length of time, or denied parole due to inappropriate comments made by treatment staff.  Further, to the extent that treatment staff relied on documentation in Brown's institutional file as to his perceived risk to the security of a facility, true or not, Brown does not assert that any of the treatment staff is responsible for making the alleged improper entries. Given the lack of relevance to Brown's remaining claims versus the Defendants' documented security concerns relating to the overall management of correctional facilities, their security, and

---

[2] Of course, if documents are referenced by Defendants as supporting their position, then production of the documents will be required.

staff's ability to make candid remarks regarding prisoners for the purposes of security, treatment, classification and parole issues, the Defendants' motion for a protective order will be granted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BROWN | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL NO. 3:CV-03-2392 |
| v. | : | |
| | : | (CHIEF JUDGE VANASKIE) |
| BENJAMIN A. MARTINEZ, ET AL., | : | |
| | : | |
| Defendants. | : | |

O R D E R

AND NOW, this 12th DAY of MAY, 2006, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1.  Defendants' Motion for a Protective Order (Dkt. Entry 33) is GRANTED.

2.  The parties may file dispositive motions on or before May 31, 2006.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania